# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC.,<br><br>　　　　Plaintiff<br><br>v.<br><br>UNIVERSAL SECURITY INSTRUMENTS, INC., *et al.*,<br><br>　　　　Defendants | Civil Action No. AMD 05-CV-0889 |

## **DEFENDANTS' JOINT ANSWER**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI," "Defendants," or "Counter-Plaintiffs"), through their attorneys, hereby Answer and otherwise respond to Plaintiff Leviton Manufacturing, Inc.'s (hereinafter "Leviton," "Plaintiff," or "Counter-Defendant") Complaint.

## ANSWER TO COMPLAINT

1. USI admits that the action sounds in patent infringement under Title 35 of the United States Code as averred in paragraph 1 of Plaintiff's Complaint, but denies the validity and basis for same.

2. USI admits that this Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367 for the matters averred, but denies the validity and basis for such averments and denies the averment that this Court has jurisdiction pursuant to 15 U.S.C. § 1121.

3. USI admits that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) in view of the matters averred, but denies the validity and basis for such averments.

4. USI is without sufficient knowledge or information to form a belief as to the truth of certain of the allegations contained in Paragraph 4 and leaves Plaintiff to its proof thereof and denies same.

5. Each of the named Defendants, USI admit that they are corporations organized under the laws of the State of Maryland, with their principal place of business at 7-A Gwynns Mill Court, Owings Mills, Maryland 21117, and conduct business in this District and in the State of Maryland.

6. USI admits that U.S. Patent No. 6,864,766 (hereinafter the "'766 Patent") purports to cover circuit interrupting devices and on its face lists Leviton Manufacturing Co., Inc., as its Assignee. USI is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 6 and leaves Plaintiff to its proof thereof and denies same.

7. USI admits that the '766 Patent is entitled "Circuit Interrupting Device With Reverse Wiring Protection" and that it issued on March 8, 2005 with Nicholas L. DiSalvo and William R. Ziegler listed as co-inventors. USI denies that the '766 Patent was duly and lawfully issued by the United States Patent and Trademark Office.

8. Unless otherwise previously admitted in the preceding paragraphs 1-7, USI denies the allegations in paragraph 8.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

## **AFFIRMATIVE DEFENSES**

USI asserts the following affirmative defenses.

**First Affirmative Defense (No Infringement)**

USI has not infringed, either literally or under the doctrine of equivalents, contributed to infringement by others, or actively induced others to infringe, any claim of U.S. Patent No. 6,864,766.

**Second Affirmative Defense (Patent Invalidity)**

The claims of U.S. Patent No. 6,864,766 are invalid for failure to comply with 35 U.S.C. § 101 *et seq.* and 37 C.F.R. Chapter 1.

**Third Affirmative Defense (Patent Unenforceability)**

The claims of U.S. Patent No. 6,864,766 are unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

**Fourth Affirmative Defense (Patent Misuse)**

The claims of U.S. Patent No. 6,864,766 are unenforceable under the doctrine of patent misuse.

**Fifth Affirmative Defense (Laches, Waiver, Estoppel, Undue Delay)**

Leviton is barred by principles of laches, waiver, estoppel and/or undue delay from asserting infringement claims against USI.

**Sixth Affirmative Defense (Mandatory License)**

Leviton is prohibited by the Patent Rules of Underwriters' Laboratories from denying USI a license to U.S. Patent No. 6,864,766.

**Seventh Affirmative Defense (General Denial)**

USI has not engaged in any wrongful conduct as alleged in Plaintiff's Complaint.

**Eighth Affirmative Defense (No Legal Recovery)**

Plaintiff has not suffered any legally recoverable damages as a result of any conduct by USI.

**Ninth Affirmative Defense (Failure to State a Claim)**

Plaintiff has failed to state a claim upon which relief can be granted.

**Tenth Affirmative Defense (Right to Assert Defenses that Develop)**

USI reserves the right to assert any additional or further affirmative defenses which may arise in the course of this proceeding.

**WHEREFORE** Defendants, USI, demand judgment against Plaintiff, dismissing with prejudice the Complaint, and any other relief deemed justified by this Court.

## COUNTERCLAIMS

1. Defendants and Counter-Plaintiffs USI plead the following counterclaims against Plaintiff, Counter-Defendant Leviton Manufacturing Co. Inc., which arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and under 28 U.S.C. § 1338(a). There is a justiciable controversy concerning the validity, enforceability, and infringement of U.S. Patent No. 6,864,766 as set forth in the Complaint and in the Answer to which this Counterclaim is appended.

2. This Court has subject matter jurisdiction over USI's counterclaims under 28 U.S.C. §§ 1338(a) and 1367 and Fed. R. Civ. P. 13. USI has submitted to the personal jurisdiction of this Court.

3. Counter-Defendant Leviton has asserted that USI is infringing U.S. Patent 6,864,766 (the "'766 patent") which issued on March 8, 2005, and is entitled "Circuit Interrupting Device With Reverse Wiring Protection."

4. U.S. Patent No. 6,864,766 identifies Nicholas L. DiSalvo and William R. Ziegler as the inventors of the claimed subject matter and Leviton Manufacturing Co., Inc. of Little Neck, New York as the Assignee.

5. U.S. Patent No. 6,864,766 identifies attorney Paul J. Sutton, Esq. as the "Attorney, Agent, or Firm" prosecuting the application which matured into the '766 Patent.

6. U.S. Patent No. 6,864,766 issued from U.S. Patent Application Serial No. 10/827,093 (the "'093 application"), which was filed on April 19, 2004.

7. The '093 application was filed with a "Petition to Make Special" based on claims of actual infringement pursuant to 37 C.F.R. § 1.102(d) and MPEP § 708.02 Item II.

8. The '093 application included a Declaration of Barry Magidoff in support of the Petition to Make Special. In his Declaration, Mr. Magidoff identifies the infringing product to be that of the Designer's Edge ("TDE") and/or Nicor. Based on a circuit diagram attached to the Declaration, these products are not manufactured by Shanghai Meihao Electric Inc., the supplier of USI's GFCI devices. The Petition to Make Special

did not identify or disclose to the PTO that four of the parent patents to which the '093 application claims priority were involved in various litigations around the country.

9. During prosecution, Leviton's attorneys filed two Information Disclosure Statements, one executed by Barry Magidoff, the other by Claude Narcisse. Neither of these Information Disclosure Statements listed prior art raised in the litigations involving the parent patents to the '093 application nor did they inform or disclose to the PTO that the parent patents were involved in various litigations around the country.

10. On information and belief, at no time during the prosecution of the '093 application did any of Leviton's attorneys, including Mr. Magidoff, Mr. Narcisse, and Mr. Sutton, or anyone at Leviton inform the PTO that the patents to which the '093 application claims priority, U.S. Patent Nos. 6,437,953; 6,246,558; 6,282,070; and 6,040,967, were involved in a number of litigations around the country in which allegations of inequitable conduct, fraud on the PTO, misjoinder of inventors, prior art, and patent invalidity were raised.

11. The Manual of Patent Examining Procedure § 2001.06(c) specifically states that litigation involving, inter alia, questions of inventorship, prior art, allegations of fraud, inequitable conduct and violation of the duty to disclose **"must"** be brought to the attention of the PTO. Messrs. Sutton, Madigoff, and Narcisse are attorneys of record in the patent infringement suits involving the four patent patents and prosecution counsel in the '766 patent.

12. On information and belief, the failure to notify the PTO of prior litigation material to the examination of the '093 application was done intentionally with the intent to deceive the PTO into expediting the '093 application.

13. More than a year before filing the '093 application, Leviton filed U.S. Provisional Application No. 60/444,469 (the "'469 provisional application").

14. The '469 provisional application was entitled "Circuit Interrupting Device and System Utilizing Bridge Contact Mechanism and Reset Lockout," and was filed on February 3, 2003.

15. On October 22, 2003, Leviton filed U.S. Patent Application Serial No. 10/690,776 (the "'776 application"), which claims priority to the '469 provisional application. The '776 application lists Paul J. Sutton and Barry Magidoff as the individuals responsible for the application.

16. The '776 application is entitled "Circuit Interupting Device and System Utilizing Bridge Contact Mechanism and Reset Lockout," and names Frantz Germain, James Richter, David Herzfeld, Armando Calixto, David Chan, and Stephen Stewart as inventors.

17. Neither Nicholas L. DiSalvo nor William R. Ziegler, the inventors of the '766 patent, the patent-in-suit, are named as inventors of the subject matter of the '776 application ("Germain application").

18. The '093 application and the Germain application have no common inventors and neither application claims priority to the other.

19. On information and belief, in preparing the '093 application and the Petition to Make Special on the basis of actual infringement, Leviton and/or its attorneys, copied the claim language of the Germain application and added it to the '093 application.

20. Claim 31 of the Germain application recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**a movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

21. Claim 1 of the '776 patent recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

22. Claim 31 of the Germain application differs from claim 1 of the '766 patent only by the substitution of "at least one movable bridge" in place of "a movable bridge."

23. Claim 42 of the Germain application recites:

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**a pair of movable bridges** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

24. Claim 11 of the '776 patent recites:

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

25. Claim 42 of the Germain application differs from claim 11 of the '766 patent only by the substitution of "at least one movable bridge" in place of "a pair of movable bridges."

26. The dependent claims of the '766 patent have virtually identical language to dependent claims in the Germain application.

27. The claims of the Germain application and the '766 patent cover the same patentable invention, or an obvious variant of each other.

28. At no time during the prosecution of the '093 application did any of Leviton's attorneys, including Mr. Magidoff, Mr. Narcisse and Mr. Sutton, or anyone at Leviton inform the PTO that the '093 application claims and the Germain application contained claims of identical scope and/or almost verbatim language.

29. The Manual of Patent Examining Procedure § 2001.06(b) requires that information regarding related applications must be brought to the attention of the examiner.

30. Under Federal Circuit precedent, under the "reasonable examiner" standard, an application is "highly material" to the prosecution of another if it could have conceivably served as the basis of a double patenting rejection.

31. The Germain application could have served as the basis for a double patenting rejection in view of the identical claim language and thus was highly material to the examination of the '766 patent.

32. On information and belief, the failure to disclose to the PTO the Germain application was done intentionally to deceive the PTO as to the origins of the claim language, the late date of invention of the claimed subject matter, the lack of support to claim priority to earlier applications, and the lack of a written description to support the claim language, in order to obtain an early allowance.

33. Underwriters' Laboratories ("UL") has a Patent Policy that requires companies such as Leviton to disclose the existence of any patents or patent applications, the use of which is included in a proposed UL/ANSI standard.

34. On information and belief, Leviton never disclosed to Underwriters' Laboratories the existence of any of the patents in its portfolio, including the '093 application, despite its belief that it had claims drafted to cover implementation of the new UL 943 Standard.

35. On information and belief, Leviton's failure to disclose the existence of its patents and patent applications, including the '093 application, was done intentionally with the hope of deceiving Underwriters' Laboratories into adopting proposed standard changes in hopes that the proposed changes would be covered by claims drafted by Leviton.

**FIRST COUNTERCLAIM – PATENT INVALIDITY**

36. Defendants/Counter-Plaintiffs USI repeats the allegations contained in preceding paragraphs 1-35.

37. The '766 patent is invalid under 35 U.S.C. § 102 due to anticipation by prior art.

38. The '766 patent is invalid under 35 U.S.C. § 103 due to obviousness in view of prior art.

39. The '766 patent is invalid under 35 U.S.C. § 112, first paragraph, due to an inadequate written description of the claimed invention.

40. The '766 patent is invalid under 35 U.S.C. § 112, second paragraph, due to indefinite claim language.

41. The '766 patent is invalid under 35 U.S.C. § 116 because neither Nicholas L. DiSalvo nor William R. Zielger invented the subject matter claimed.

## SECOND COUNTERCLAIM – PATENT UNENFORCEABILITY

42. Defendants/Counter-Plaintiffs USI repeat the allegations contained in preceding paragraphs 1-35.

43. The '766 patent is unenforceable due to inequitable conduct on the part of Leviton and its attorneys for intentionally concealing material information from the PTO.

44. The '766 patent is unenforceable due to inequitable conduct on the part of Leviton and its attorneys for filing a misleading declaration in support of a Petition to Make Special.

46. The '766 patent is unenforceable due to inequitable conduct on the part of Leviton and its attorneys due to the intentional misidentification of the inventive entity of the subject matter claimed.

47. The '766 patent is unenforceable due to the inequitable conduct on the part of Leviton and its attorneys due to the intentional concealment of the existence of the Germain application and its materiality in view of the identity of the claim language, the clear double patenting problem it presented, and the fear that it would expose the lack of written description for the claims of the '766 patent.

48. The '766 patent is unenforceable due to fraud on the PTO on the part of Leviton and its attorneys in view of the acts set forth herein.

49. The '766 patent is unenforceable due to policies of Underwriter's Laboratories forbidding a party attempting to patent a standard from refusing to license the patent.

### THIRD COUNTERCLAIM – NONINFRINGEMENT

50. Defendants/Counter-Plaintiffs USI repeat the allegations contained in preceding paragraphs 1-35.

51. The Meihao GFCI devices imported and sold by USI do not infringe any of the claims of U.S. Patent No. 6,864,766.

**WHEREFORE**, Defendants/Counter-Plaintiffs, USI, pray for:

A. A judgment dismissing the Complaint with prejudice;

B. A judgment declaring U.S. Patent No. 6,864,766 to be invalid and void;

C. A judgment declaring U.S. Patent No. 6,864,766 to be unenforceable;

D. A judgment declaring that Defendants have not infringed any claim of U.S. Patent No. 6,864,766;

E.   A judgment enjoining Plaintiff from instituting, prosecuting, threatening to initiate civil actions or proceedings, and/or asserting rights in U.S. Patent No. 6,864,766 against Defendants or any of its customers;

F.   A judgment declaring this case to be exceptional under 35 U.S.C. §285;

J.   Costs of this litigation to be awarded to Defendants;

K.   Defendants to be awarded their reasonable attorneys fees pursuant to 35 U.S.C. §285; and

L.   The Court to award any other relief that it deems just and proper.

Respectfully submitted,

/s/
Maurice U. Cahn
Fredrick N. Samuels
William E. Bradley
CAHN & SAMUELS LLP
2000 P Street, NW Suite 200
Washington, DC 20036
(202) 331-8777
(202) 331-3838 FAX

Attorneys for Defendants