## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC.. ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | |
| ) | |
| UNIVERSAL SECURITY INSTRUMENTS, ) | CIVIL ACTION NO. 1:05-CV-00889 AMD |
| INC., et al. ) | (CONSOLIDATED) |
| ) | |
| DEFENDANTS. ) | |
| ) | |
| CONSOLIDATED WITH: ) | |
| ) | |
| SHANGHAI MEIHAO ELECTRIC, INC. ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | |
| ) | |
| LEVITON MANUFACTURING COMPANY, ) | |
| INC. ) | |
| ) | |
| DEFENDANT. | |

## DECLARATION OF JAMES T. HOSMER

I, James T. Hosmer, hereby declare and state as follows:

1.     I am counsel for defendant/counter-plaintiff, Leviton Manufacturing Co.,

Inc., ("Leviton") in Civil Action No. 1:05-CV-00889 AMD (Consolidated).  This

Declaration is being submitted in opposition to the motion filed by

plaintiff/counter-defendant, Shanghai Meihao Electric, Inc. ("Meihao") for costs and

attorneys fees in this action.

1378453

2.     Attached hereto as Exhibit A is a true and correct copy of Sections 1.602 through 1.604 of Title 37 of the Code of Federal Regulations, effective as of the filing date of the patent application that issued as U.S. Patent No. 6,864,766 (the "'766 patent"). 37 C.F.R. § 1.602(a) states:

> "Unless good cause is shown, an interference shall not be declared or continued between (1) applications owned by a single party or (2) applications and an expired patent owned by a single party."

3.     Attached hereto as Exhibit B is a true and correct copy of a decision by the U.S. Court of Appeals for the Federal Circuit captioned *Barton v. Adang*, 162 F.3d 1140 (Fed. Cir. 1998).  The research conducted by my office following the hearing before Magistrate Judge Gauvey on September 3, 2008 indicates that during the past 84 years, the Patent Office has declared an interference between two applications owned by the same company on only two occasions, and based on factual circumstances very different from the present case. *See Id.* at 1145-46.  Upon information and belief, based on available PTO statistics I understand that during this same time period the Patent Office has handled over 50,000 interference proceedings.

4.     Attached hereto as Exhibit C is a true and correct copy of the patent Examiner's Answer filed on August 20, 2008 with the Board of Patent Appeals and Interferences in the '766 reexamination.  Exhibit C also includes a copy of the "Information Disclosure Statement by Applicant" as filed by Leviton on August 7, 2007 but with a notation on the bottom of each page indicating that the PTO Examiner, Ramon M. Barrera (initials "RB"), considered each prior art reference and document submitted with the IDS. *See* the typewritten notation on the bottom left-hand portion of each page of the IDS ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /RB/").

Examiner Barrera signed the IDS on January 28, 2008.  However, the signed IDS was not entered into the public U.S. Patent Office data base relating to the '766 reexamination until August 20, 2008 – the same day the Examiner filed his Answer.  Thus, it was not possible for Leviton to know about the Examiner's signing of the IDS prior to August 20, 2008.

5.     Attached hereto as Exhibit D is a true and correct copy of USPTO docket list for papers filed in the '766 reexamination proceeding (PTO Docket Control No. 95,000,097).  The docket list indicates that Examiner Barrera filed the Answer to Requestor's opening brief, together with the "List of References cited by applicant and considered by examiner" (Exhibit C) on August 20, 2008.

6.     Attached hereto as Exhibit E is a true and correct copy of "Defendant Zhejiang Dongzheng Electric Co.'s Response to Plaintiff's First Interrogatories" as served in the New Mexico litigation involving the '766 patent.  A copy of Exhibit E was submitted with the Information Disclosure Statement filed by Leviton in the '766 reexamination on August 7, 2007 (see item No. 2 on page 7 of the IDS).  Select portions of the interrogatory responses relating to the "Germain Application" are highlighted for the Court's convenience beginning on page 14 (response to Interrogatory No. 12).  Examiner Barrera considered Exhibit E on January 28, 2008 as indicated by his initials on page 7 of the IDS in Exhibit C and made part of the public record on August 20, 2008.

7.     Attached hereto as Exhibit F is a true and correct copy of a "Complaint and Request for Declaratory Relief" dated May 6, 2005 as filed by Shanghai Meihao Electric Inc. in this Court.  A copy of Exhibit F was submitted with the Information Disclosure Statement filed by Leviton in the '766 reexamination on August 7, 2007 (see item No. 6

on page 7 of the IDS).  Select portions of the complaint relating to the "Germain Application" and to alleged prior art from other litigations are highlighted for the Court's convenience beginning on page 3.  PTO Examiner Barrera considered Exhibit F on January 28, 2008 as indicated by his initials on page 7 of the IDS in Exhibit C and made part of the public record on August 20, 2008.

8.    Attached hereto as Exhibit G is a true and correct copy of "Defendant Nicor, Inc. D/B/A Nicor Lighting & Fans Answer to Plaintiff's Second Amended Complaint and Counterclaim" as filed in the New Mexico litigation involving the '766 patent.  A copy of Exhibit G was submitted with the Information Disclosure Statement filed by Leviton in the reexamination on August 7, 2007 (*see* item No. 13 on page 8 of the IDS).  Select portions of Exhibit G relating to the "Germain Application" and to alleged prior art from other litigations are highlighted for the Court's convenience beginning on page 10.  PTO Examiner Barrera considered Exhibit G on January 28, 2008 as indicated by his initials on page 8 of the IDS in Exhibit C and made part of the public record on August 20, 2008.

9.    Attached hereto as Exhibit H is a true and correct copy of a letter dated August 7, 2007 from counsel for Leviton to the Commissioner of Patents relating to the '766 reexamination enclosing Leviton's Information Disclosure Statement (with attachments) for consideration by Examiner Barrera.

10.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  9/05/08

James T. Hosmer

1378453

EXHIBIT A

# 37 CFR

## Patents, Trademarks, and Copyrights

### July 2003 edition

**UNITED STATES PATENT AND TRADEMARK OFFICE,
DEPARTMENT OF COMMERCE**

§ 1.602

(q) A *final decision* is a decision awarding judgment as to all counts. An *interlocutory order* is any other action taken by an administrative patent judge or the Board in an interference, including the notice declaring an interference.

(r) *NAFTA country* means NAFTA country as defined in section 2(4) of the North American Free Trade Agreement Implementation Act, Pub. L. 103–182, 107 Stat. 2060 (19 U.S.C. 3301).

(s) *WTO member country* means WTO member country as defined in section 2(10) of the Uruguay Round Agreements Act, Pub. L. 103–465, 108 Stat. 4813 (19 U.S.C. 3501).

[49 FR 48455, Dec. 12, 1984; 50 FR 23123, May 31, 1985, as amended at 58 FR 49434, Sept. 23, 1993; 60 FR 14519, Mar. 17, 1995; 65 FR 70490, Nov. 24, 2000]

## § 1.602

### Interest in applications and patents involved in an interference.

(a) Unless good cause is shown, an interference shall not be declared or continued between (1) applications owned by a single party or (2) applications and an unexpired patent owned by a single party.

(b) The parties, within 20 days after an interference is declared, shall notify the Board of any and all right, title, and interest in any application or patent involved or relied upon in the interference unless the right, title, and interest is set forth in the notice declaring the interference.

(c) If a change of any right, title, and interest in any application or patent involved or relied upon in the interference occurs after notice is given declaring the interference and before the time expires for seeking judicial review of a final decision of the Board, the parties shall notify the Board of the change within 20 days after the change.

[49 FR 48455, Dec. 12, 1984, as amended at 60 FR 14519, Mar. 17, 1995]

## § 1.603

### Interference between applications; subject matter of the interference.

Before an interference is declared between two or more applications, the examiner must be of the opinion that there is interfering subject matter claimed in the applications which is patentable to each applicant subject to a judgment in the interference. The interfering subject matter shall be defined by one or more counts. Each application must contain, or be amended to contain, at least one claim that is patentable over the prior art and corresponds to each count. All claims in the applications which define the same patentable invention as a count shall be designated to correspond to the count.

[60 FR 14519, Mar. 17, 1995]

## § 1.604

### Request for interference between applications by an applicant.

(a) An applicant may seek to have an interference declared with an application of another by,

(1) Suggesting a proposed count and presenting at least one claim corresponding to the proposed count or identifying at least one claim in its application that corresponds to the proposed count,

(2) Identifying the other application and, if known, a claim in the other application which corresponds to the proposed count, and

(3) Explaining why an interference should be declared.

(b) When an applicant presents a claim known to the applicant to define the same patentable invention claimed in a pending application of another, the applicant shall identify that pending application, unless the claim is presented in response to a suggestion by the examiner. The examiner shall notify the Director of any instance where it appears an applicant may have failed to comply with the provisions of this paragraph.

§ 1.605

[24 FR 10332, Dec. 22, 1959, as amended at 53 FR 23735, June 23, 1988; 60 FR 14519, Mar. 17, 1995]

§ 1.605

**Suggestion of claim to applicant by examiner.**

(a) If no claim in an application is drawn to the same patentable invention claimed in another application or patent, the examiner may suggest that an applicant present a claim drawn to an invention claimed in another application or patent for the purpose of an interference with another application or a patent. The applicant to whom the claim is suggested shall amend the application by presenting the suggested claim within a time specified by the examiner, not less than one month. Failure or refusal of an applicant to timely present the suggested claim shall be taken without further action as a disclaimer by the applicant of the invention defined by the suggested claim. At the time the suggested claim is presented, the applicant may also call the examiner's attention to other claims already in the application or presented with the suggested claim and explain why the other claims would be more appropriate to be designated to correspond to a count in any interference which may be declared.

(b) The suggestion of a claim by the examiner for the purpose of an interference will not stay the period for response to any outstanding Office action. When a suggested claim is timely presented, *ex parte* proceedings in the application will be stayed pending a determination of whether an interference will be declared.

[49 FR 48455, Dec. 12, 1984, as amended at 60 FR 14519, Mar. 17, 1995]

§ 1.606

**Interference between an application and a patent; subject matter of the interference.**

Before an interference is declared between an application and an unexpired patent, an examiner must determine that there is interfering subject matter claimed in the application and the patent which is patentable to the applicant subject to a judgment in the interference. The interfering subject matter will be defined by one or more counts. The application must contain, or be amended to contain, at least one claim that is patentable over the prior art and corresponds to each count. The claim in the application need not be, and most often will not be, identical to a claim in the patent. All claims in the application and patent which define the same patentable invention as a count shall be designated to correspond to the count.

[65 FR 70490, Nov. 24, 2000]

§ 1.607

**Request by applicant for interference with patent.**

(a) An applicant may seek to have an interference declared between an application and an unexpired patent by,

(1) Identifying the patent,

(2) Presenting a proposed count,

(3) Identifying at least one claim in the patent corresponding to the proposed count,

(4) Presenting at least one claim corresponding to the proposed count or identifying at least one claim already pending in its application that corresponds to the proposed count, and, if any claim of the patent or application identified as corresponding to the proposed count does not correspond exactly to the proposed count, explaining why each such claim corresponds to the proposed count, and

(5) Applying the terms of any application claim,

(i) Identified as corresponding to the count, and

(ii) Not previously in the application to the disclosure of the application.

(6) Explaining how the requirements of 35 U.S.C. 135(b) are met, if the claim presented or identified under paragraph (a)(4) of this section was not present in the application until more than one year after the issue date of the patent.

149

EXHIBIT B

date of HUD's Commitments were controlling and binding on the government.



Kenneth A. BARTON and Michael
J. Miller, Appellants,

v.

Michael J. ADANG, Thomas A. Roucheleau, Donald J. Merlo and Elizabeth E. Murray, Appellees.

No. 97–1491.

United States Court of Appeals,
Federal Circuit.

Dec. 9, 1998.

Three-party interference was declared between junior parties, who owned pending patent applications, and senior party, who owned issued patent, as to method of designing synthetic gene for expression in plants. After one junior party became owner of both pending applications, the Board of Patent Appeals and Interferences required that party to elect between its applications and entered judgment against party on unelected application. Junior party appealed. The Court of Appeals, Rich, Circuit Judge, held that: (1) entry of judgment as to unelected application was final appealable decision; (2) Commissioner of Patents and Trademarks reasonably interpreted regulation relating to commonly-owned applications and patents; but (3) junior party which now owned both applications established good cause to continue interference on both its applications until preliminary motions to finalize the count were decided and discovery was complete.

Reversed and remanded.

1. Patents ⟷113(2)

Entry of judgment against one of two junior parties in three-party interference was

a final appealable decision without entry of final judgment in the underlying interference proceeding.  28 U.S.C.A. § 1295(a)(4)(A).

2. Federal Courts ⟷776

Statutory construction is a question of law that Court of Appeals reviews de novo.

3. Patents ⟷106(1)

Commissioner of Patents and Trademarks has discretion whether to declare an interference.  35 U.S.C.A. § 135(a).

4. Patents ⟷106(1, 5)

Authority for Board of Patent Appeals and Interferences to determine questions of priority in interference proceeding does not vitiate discretion of Commissioner of Patents and Trademarks to begin or discontinue an interference once declared.  35 U.S.C.A. § 135(a).

5. Patents ⟷113(7)

Court of Appeals must accept interpretation by Commissioner of Patents and Trademarks of the regulations promulgated by the Patent and Trademark Office unless such interpretation is plainly erroneous or inconsistent with the regulations.

6. Patents ⟷106(5)

Commissioner of Patents and Trademarks reasonably interpreted regulation providing that, unless good cause is shown, interference shall not be declared or continued between commonly-owned applications and/or patents to require, in multiparty interferences, election between commonly owned applications and/or patents unless good cause exists for both to continue in an interference, rather than requiring only discontinuance of interference between the two commonly owned applications or patents.  37 C.F.R. § 1.602(a).

7. Patents ⟷113(6)

A decision of the Board of Patent Appeals and Interferences pursuant to the permissive rules governing an interference is reviewed for abuse of discretion, which occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) in-

volves a record that contains no evidence on which the Board could rationally base its decision.

**8. Patents ⟝106(4)**

Junior party which became common owner of both junior party applications in three-party interference proceeding established good cause to continue the interference on both its applications, at least until preliminary motions to finalize the count were decided and discovery was complete, since it was not yet clear what content of final count would be or what proofs on dates of conception and reduction to practice senior party would seek to establish. 37 C.F.R. § 1.602(a).

**9. Patents ⟝106(3)**

The purpose of the count, in an interference proceeding, is to determine what evidence is relevant to the issue of priority.

---

Michael F. Borun, Marshall, O'Toole, Gerstein, Murray & Borun, of Chicago, Illinois, argued for appellants. With him on the brief was Li–Hsien Rin–Laures. Of counsel on the brief were Lawrence M. Lavin, Jr., Monsanto Company, of Saint Louis, Missouri; and Charles L. Gholz and Alton D. Rollins, Oblon, Spivak, McClelland, Maier & Neustadt, of Arlington, Virginia.

Brett S. Sylvester, Sughrue, Mion, Zinn, MacPeak & Seas, PLLC, of Washington, DC, argued for appellees. With him on the brief were Thomas J. Macpeak, Susan J. Mack, and Oliver R. Ashe.

Before RICH, RADER, and GAJARSA, Circuit Judges.

RICH, Circuit Judge.

Kenneth A. Barton and Michael J. Miller appeal from a judgment of the Board of Patent Appeals and Interferences (Board) entered against Barton et al. in a three-party interference as to the subject matter in claims 1–4, 7, and 15–22 of the Barton et al. application designated as corresponding to a single count of the interference. Because we find that the Board abused its discretion, we reverse and remand.

*BACKGROUND*

The Board declared a three-party interference on November 7, 1996, between the following two pending patent applications, whose owners were deemed junior parties, and an issued patent, whose owner was deemed the senior party, listed as follows:

(1) Serial No. 07/827,906, entitled "Improved Expression of Genes in Plants," filed by Kenneth A. Barton and Michael Miller, assigned to Agracetus (Barton et al.);

(2) Serial No. 08/434,105, entitled "Synthetic Plant Genes and Method for Preparation," filed by David A. Fischhoff and Frederick J. Perlak, assigned to Monsanto Company (Fischhoff et al.);

(3) U.S. Patent No. 5,380,831, entitled "Synthetic Insecticidal Crystal Protein Gene," filed by Michael J. Adang, Thomas A. Rocheleau, Donald J. Merlo, and Elizabeth E. Murray and assigned to Mycogen Plant Science, Inc. (Adang et al.).

The subject matter of the interference relates to introducing into plants genes that encode bacterial proteins from *B. thuringiensis* that are selectively toxic to insects so that the plant cells produce the bacterial insect toxin and are protected from insects that feed on them. More specifically, the count relates to designing modified genes from *B. thuringiensis* to be more highly expressed in plant host cells. The Board assigned only a single count in the interference, which reads as follows:

A method of designing a synthetic *Bacillus thuringiensis* gene to be more highly expressed in plants, comprising the steps of:

a) analyzing the coding sequence of a gene derived from a *Bacillus thuringiensis* which encodes an insecticidal protein toxin, and modifying a portion of said coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant host than did said coding sequence, or

b) analyzing the coding sequence of a gene derived from a *Bacillus thuringiensis* which encodes an insecticidal protein

toxin, and modifying a portion of said coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant host than did said coding sequence and fewer plant polyadenylation signals than said coding sequence.

The Board stated that all pending claims 1–4, 7, and 15–22 of the Barton et al. application were assigned to the count, claims 3, 5, 39–43 of the Fischhoff et al. application were assigned to the count, and all claims 1–14 of the Adang et al. patent were assigned to the count.

Shortly after the Board's declaration of the interference, Monsanto bought Agracetus, the owner of the Barton et al. application, and filed a notification of ownership of the entire right, title, and interest in both the Barton et al. and the Fischhoff et al. applications only two weeks after the interference had been declared. Monsanto stated in its notification that good cause existed for continuing the interference between all three parties pursuant to 37 C.F.R. § 1.602(a) because the precise content of the count in an interference is subject to change following preliminary motions, which were not yet due, and the inherent legal uncertainties involved in priority determinations in biotechnology concerning the possible application of a simultaneous conception and reduction to practice rule made it impossible for Monsanto to choose the best application with which to defend the interference.

Adang et al. countered that Monsanto had not shown good cause to continue the interference with both the Fischhoff et al. and Barton et al. applications because the interests of Fischhoff et al. and Barton et al. were no longer adverse to each other, and Monsanto had all available information to make an informed decision of priority between the two commonly owned applications. In response, Monsanto stated that a public interest exists in deciding all of the issues among parties in interest relating to a single patentable invention in a single *inter partes* proceeding before the Board.

The Board found that Monsanto had not shown good cause why the interference should be continued with both of the commonly owned applications, and issued a show cause order why judgment should not be entered against Monsanto. Monsanto again argued that the count was indefinite, rendering it impossible for Monsanto to make a rational election between the two commonly owned applications. Monsanto asked that the imposition of the requirement that it, as the common assignee, elect between the applications be postponed until after the decisions on the preliminary motions resolving the issue of the content of the count.

The Board held that Monsanto had not shown good cause to continue the three-party interference because it had not shown that the count needed to be modified or that there were separately patentable inventions involved in either application. Based on this order, Monsanto elected to proceed with Fischhoff et al. and entry of judgment against Barton et al. was deferred until the final hearing of the interference. Monsanto petitioned the Commissioner for review of the order under 37 C.F.R. § 1.644(a)(1) and (3), asserting the same arguments of indefiniteness of the count and its uncertainty concerning the applicable legal standard for a priority determination in biotechnology cases.

Adang et al. responded that "[e]ven if the count is indefinite (which it is not), there is only one invention involved in this interference and the parties—including Monsanto—know perfectly well what it is." Also, Adang et al. responded that "[t]he burden of determining what law applies rests on Monsanto. The simultaneous conception and reduction to practice 'rule' is a well known concept in interference law." Adang et al. asserted that the possibility that the content of the count will change through preliminary motions is not of the ilk of the rare circumstances for continuing the three party interference because "[o]riginal counts are often changed as the result of decisions on preliminary motions, but the changes almost always result in counts that embrace the same basic invention."

On petition to the Commissioner, Chief

BARTON v. ADANG 1143
Cite as 162 F.3d 1140 (Fed. Cir. 1998)

Administrative Patent Judge Stoner[1] found that even if "Monsanto is correct that the count is indefinite, that supposed indefiniteness does not amount to the requisite 'good cause.' ... Monsanto need only compare the inventions in its own applications to decide which is prior." *Barton v. Fischhoff v. Adang*, Patent Interference No. 103,781, slip op. at 13 (BPAI March 26, 1997). Chief Administrative Patent Judge Stoner further found that:

> In the absence of a showing of good cause, all obligations associated with that ownership status, including the obligation of determining what law applies to the facts at hand, are those of the owner. Monsanto has not shown that documentary evidence relevant to priority as between Barton and Fischhoff is unavailable to Monsanto. Nor has Monsanto shown that any witnesses are unavailable or uncooperative.

*Id.* Chief Administrative Patent Judge Stoner concluded that "Monsanto's contentions fall far short of establishing either that this is an extraordinary situation or that justice requires suspension or waiver of 37 C.F.R. § 1.602(a)," denied relief, and did not allow postponement of election until after preliminary motions. *Id.* Monsanto, however, moved to have judgment entered against Barton et al. immediately, which the Board granted. Monsanto appeals from this decision to enter judgment against Barton et al.

*DISCUSSION*

I.

[1] Although neither Monsanto nor Mycogen has challenged our jurisdiction to review the Board's decision, this court "has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it." *Woodard v. Sage Prods., Inc.,* 818 F.2d 841, 844, 2 USPQ2d 1649, 1651 (Fed.Cir. 1987) (in banc). Under 28 U.S.C. § 1295(a)(4)(A), this court has exclusive jurisdiction of an appeal from "a decision" of the Board. Although this provision does not expressly require "a *final* decision" for appellate jurisdiction, this court has held that

§ 1295(a)(4) should be read to incorporate a finality requirement. *See Copelands' Enter., Inc. v. CNV, Inc.,* 887 F.2d 1065, 1067–68, 12 USPQ2d 1562, 1564–65 (Fed.Cir.1989) (in banc). We hold that the entry of judgment against Barton et al. is a final appealable decision without entry of final judgment in the underlying interference proceeding.

II.

Monsanto argues that the Board's decision requiring election between Barton et al. and Fischhoff et al. without benefit of any information regarding Adang et al.'s alleged invention dates is contrary to the mandatory word "shall" in 35 U.S.C. § 135(a) (1994). Monsanto also argues that the plain meaning of 37 C.F.R. § 1.602(a) does not support the position that Monsanto must elect between its commonly owned applications, because it does not clearly address the situation where some, but not all, of the applications or patents in an interference are owned by a single assignee. Monsanto asserts that a controversy remains between Barton et al. and Adang et al., as well as between Fischhoff et al. and Adang et al.

Lastly, Monsanto again asserts that it has shown "good cause" to retain Barton et al. as a party because the count is indefinite. In fact, Monsanto points out, both Adang et al. and Fischhoff et al. have filed motions to substitute a different count. Monsanto asserts that Fischhoff et al.'s best proofs of conception lie outside of the literal language of the current, single count because it does not encompass modifications that remove only polyadenylation signals as claimed in claim 3 of the Fischhoff et al. application. Monsanto also asserts that because of the biotechnological nature of this invention, it is impossible for Monsanto to predict when conception occurred because it may be deemed an invention where conception cannot take place until reduction to practice when the inventors have demonstrated "more" expression in test plants of a gene modified according to the count. Therefore, Monsanto con-

---

1. The Commissioner has delegated decisions on petitions brought under 37 C.F.R. § 1.644 to the    Chief Administrative Patent Judge.

cludes that the incompleteness of the factual record on this matter establishes *prima facie* "good cause" for continuing a three-party interference.

Mycogen counters these arguments by asserting that the Commissioner has discretion whether to declare an interference from the plain meaning of the permissive word "may" in § 135(a).[2]  Mycogen argues that this discretion should extend to the issue of whether to continue an interference that has already been declared.

Mycogen also states that the language of 37 C.F.R. § 1.602 applies equally well to the situation where a single party owns all of the applications or patents involved, and the situation where a single party owns some, but not all, of the involved applications or patents.  Mycogen supports this interpretation of the regulation by pointing to Manual of Patent Examining Procedure (MPEP) § 2302 which states that when there is an interference with a third party, only the commonly owned application or patent having the earliest filing date is placed in an interference with the third party.

Mycogen asserts that Monsanto has not shown "good cause" under 37 C.F.R. § 1.602(a) to maintain the three-party interference.  Mycogen again argues that "[e]ven if the count is not perfect, there is only one invention involved in this interference, and the parties know perfectly well what it is.  Thus, Monsanto can easily make a rational choice between Barton et al. and Fischhoff et al., as it has, in fact, done."  Mycogen notes that Monsanto has all of the proofs relevant to priority of invention in its possession and control.  In fact, Mycogen asserts, Monsanto's determination that the elected party Fischhoff et al.'s "best" proofs of conception lie outside the literal language of the count establishes that Monsanto knows what the available proofs are and can make a rational decision as to priority.  Also, Monsanto has not shown, according to Mycogen, that it is impossible for it to determine priority because of the supposedly unsettled law surrounding simultaneous conception and reduction to practice.

### III.

[2–4]  Statutory construction is a question of law that we review *de novo.  See Abbott Lab. v. Novopharm Ltd.,* 104 F.3d 1305, 1308, 41 USPQ2d 1535, 1537 (Fed.Cir.1997) (citing *Romero v. United States,* 38 F.3d 1204, 1207 (Fed.Cir.1994)).  The statutory basis for declaring an interference, 35 U.S.C. § 135(a) (1994), reads

> Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, an interference may be declared....  The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability.

The plain meaning of this statute is clear from the use of the permissive term "may" that the Commissioner has discretion whether to declare an interference.  *See In re Alappat,* 33 F.3d 1526, 1531, 31 USPQ2d 1545, 1547 (Fed.Cir.1994) (in banc) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary.")  Once the interference is declared the statute states that the Board shall determine questions of priority.  This authority for the Board to determine questions of priority, however, does not vitiate the Commissioner's discretion to begin or discontinue an interference once declared.  The mandatory language only instructs the Board of its jurisdiction over an active interference.

### IV.

Monsanto does not attack the legitimacy of 37 C.F.R. § 1.602(a), promulgated by the Commissioner under 35 U.S.C. § 135(a), but its application to a multi-party interference.  Section 1.602(a) provides, "[u]nless good cause is shown, an interference shall not be declared or continued between (1) applica-

2.  Mycogen argues that we should not address this issue because Monsanto did not raise it be-   low.

BARTON v. ADANG                    1145
Cite as 162 F.3d 1140 (Fed. Cir. 1998)

tions owned by a single party or (2) applications and an unexpired patent owned by a single party." 37 C.F.R. § 1.602(a) (1998).

[5] The Commissioner interpreted this section as applying to a multi-party interference where all of the involved applications or patents are not commonly owned, and requiring election between the two commonly held applications or patents.³ We must accept the Commissioner's interpretation of the regulations promulgated by the Patent and Trademark Office "unless it is plainly erroneous or inconsistent with the regulations." *Immigration & Naturalization Serv. v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969) (citation omitted); *see also Kubota v. Shibuya*, 999 F.2d 517, 27 USPQ2d 1418 (Fed.Cir.1993).

[6] The term "between" as used in the regulation can be reasonably interpreted to require election between commonly owned applications and/or patents unless good cause exists for both to continue in an interference. To read the regulation, as Monsanto urges, to require only the discontinuance of an interference between two commonly owned applications or patents only, without regard to the noncommonly owned application or patent, is a very narrow alternative reading. We hold that the Commissioner's interpretation is reasonable and consistent with the language of the regulation.

### V.

[7] Monsanto also attacks the Commissioner's discretion in finding a lack of "good cause" to continue the interference.

A board decision pursuant to the permissive rules governing an interference is reviewed for abuse of discretion.... An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record

that contains no evidence on which the Board could rationally base its decision. *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51, 29 USPQ2d 1615, 1617 (Fed.Cir.1994) (paragraphing and citations omitted).

Much ado is made of whether the case law cited by Mycogen to support its position that the interference should not be continued with Barton et al. is applicable under the "new rules." Monsanto urges that under the new rules after the merger of the Board of Appeals and the Board of Patent Interferences, it is preferred that the Board decide all controversies between the parties, including both priority and patentability, in an *inter partes* forum. We find that the case law is still applicable under the "new rules," but not dispositive of the case before us.

The Commissioner has generally declined to continue an interference when two applications (or patents) become commonly owned, finding a lack of "good cause." *See Morehouse v. Armbruster*, 209 USPQ 514, 516, 1980 WL 39055 (Com'r Pat. & Trademarks 1980) ("The fact that the final hearing has already been held is not considered to constitute good cause or such an exceptional situation as to warrant continuing the interferences."); *Malone v. Toth*, 202 USPQ 395, 396, 1978 WL 21306 (Cmm'r Pat & Trademarks 1978) ("The mere desire to have the Patent and Trademark Office decide the interference is not considered to constitute a showing of 'good cause' under 37 C.F.R. § 1.201(c), inasmuch as the burden of determining priority as between two commonly-owned cases involved in an interference rests upon their owner."); *Tunstall v. White*, 1926 C.D. 19 (Asst. Cmm'r for Patents 1924) (placing burden on owner of both applications to determine priority). The only case in which the Commissioner has found "good cause" to continue an interference with commonly owned applications is *Sprague v. Howe*, 1925 C.D. 115 (Cmm'r of Patents 1924), a case involving a three-party interference.⁴ The

---

3. The Commissioner previously expressed a similar interpretation of this section by the following statement in the MPEP: "Where an interference with a third party is found to exist, the commonly owned application having the earliest effective filing date will be placed in interference with the third party." MPEP § 2302 (6th ed.1997).

4. *Sprague* was decided under a slightly different regulation than 1.201(c) requiring a party of commonly owned applications or patents to show cause why the designated claims should not be eliminated from all but one of its applications or patents.

Commissioner found that where a common assignee is unable to determine which of the assignors is the prior inventor, because the common assignee was unable to obtain information from the inventors of one of the assigned applications absent an order from a competent court, good cause existed to continue the three-party interference.

[8, 9]  It is true that Monsanto has not alleged that any information, as in *Sprague,* is unavailable to it on the Barton et al. application.  Monsanto, however, was forced to elect between its two commonly owned applications shortly after the interference began, before a decision on the preliminary motions, and before discovery was complete.  Both Adang et al. and Fischhoff et al. filed preliminary motions to substitute for the count.  "The purpose of the count is to determine what evidence is relevant to the issue of priority."  *Case v. CPC Int'l, Inc.,* 730 F.2d 745, 749, 221 USPQ 196, 199 (Fed.Cir.) (citation omitted), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984).  Therefore, at the time that Monsanto was forced to make an election between the Barton et al. and the Fischhoff et al. applications, it was not clear what the content of the final count would be or what proofs on dates of conception and reduction to practice Adang et al. would seek to establish.  Also, if the final count as decided by the Board excluded subject matter disclosed in Barton et al., but not Fischhoff et al., Monsanto loses arguably patentable subject matter by early dismissal of Barton et al.

At this stage of the proceedings, Monsanto could not determine which application, either Barton et al. or Fischhoff et al., would be the best evidence to establish priority.  We hold that Monsanto has shown "good cause" to continue the interference on both its applications until the preliminary motions to finalize the count are decided by the Board and discovery is complete.

### CONCLUSION

For the reasons set forth herein, we reverse and remand the case to the Board to continue the three-party interference until the Board determines the final count and discovery is complete.

*REVERSED AND REMANDED.*

